[No. 52566-2-I.   Division One.   August 2, 2004.]

TREVOR CRAIG SHELDON, *Appellant*, v. AMERICAN STATES PREFERRED INSURANCE COMPANY, *Respondent*.

Colonel *F. Betz* and *Gregory N. Bilyeu* (of *Youngquist & Betz*) (*Patrick W. Pendley* and *Stanley P. Baudin* of *Pendley Law Firm*, of counsel), for appellant.

*John C. Belcher* and *James M. Doran* (of *Belcher, Swanson, Lackey, Doran, Lewis & Robertson*) (*Cari K. Dawson, Debra D. Bernstein*, and *Michael P. Kenney* of Alston & Bird, L.L.P., of counsel), for respondent.

ELLINGTON, J. — American States Preferred Insurance Company (American States) offers auto insurance. For a two-dollar fee, its customers may pay their premiums in installments. Trevor Sheldon represents a class of policyholders who elected installment plans. The class contends the installment fee is part of the premium as defined by RCW 48.18.170, and should have been described as such under RCW 48.18.180. Because it was not, the class argues that the fee was illegal and must be disgorged. The installment fee was fully disclosed, however, and was knowingly and voluntarily paid. Sheldon and the other class members suffered no injury from American States' failure to include the installment fee in the quoted premium. The trial court did not err in granting summary judgment dismissing their claim.

## BACKGROUND

Trevor Sheldon purchased several car insurance policies from American States. On each occasion, Sheldon was quoted a premium for the policy, and this premium was stated on the declaration page. When Sheldon received his billing statement, he was offered several alternative ways to pay his premium: he could pay the entire balance, or a minimum payment, or any amount in between. If he paid the entire sum at once, he paid only the quoted premium. If he paid less than the full balance, however, his payment was subject to a two-dollar service charge. Each billing statement contained an explanation of these options.[1] Sheldon elected to pay in installments.

Sheldon commenced this lawsuit individually and on behalf of all others similarly situated. He alleged that under RCW 48.18.170[2] and .180,[3] the installment charge should have been included in the premium quoted in the policy, and that failure to do so constitutes an unfair and deceptive trade practice in violation of the Consumer Protection Act (CPA),[4] a breach of contract, and results in American States' unjust enrichment.

---

[1] American States' billing statements explained:

You may pay the total account balance or any amount that fits your budget. However, you must pay at least the minimum due. If at any time you pay us more than the minimum due, and it covers your future installments, you will not receive a bill or be charged a service charge for those installments. If you pay by installments, a service charge will be added to each installment we bill.

Clerk's Papers at 134.

[2] RCW 48.18.170 defines "premium" as "all sums charged, received, or deposited as consideration for an insurance contract or the continuance thereof. Any . . . fee or charge made by the insurer in consideration for an insurance contract is deemed part of the premium."

[3] RCW 48.18.180 provides:

(1) The premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof.

(2) No insurer . . . shall charge or receive any fee, compensation, or consideration for insurance which is not included in the premium specified in the policy.

[4] Ch. 19.86 RCW.

Both sides filed summary judgment motions. The trial court took the unusual step of certifying a question to the Office of the Insurance Commissioner, as follows: "If an automobile insurance company offers its insureds a monthly billing option and applies a service charge for that option which is disclosed on the statement, would that service charge constitute a 'premium' as defined under RCW 48.18.170, and would it have to be otherwise disclosed under RCW 48.18.180?"[5] The commissioner responded in the affirmative. Thereafter, a new commissioner sent letters to third parties, referencing this litigation and purporting to clarify the previous commissioner's response to the certified question; these letters were offered in evidence by American States and were relied upon by the court. We agree with Sheldon that the letters from the commissioner to third parties were hearsay and should not have been considered.

■ Ultimately the trial court ruled that while American States had not strictly complied with the statute, it had engaged in no bad faith, and plaintiffs had suffered no damages. The court therefore granted American States' motion for summary judgment dismissing all claims. This appeal followed. Our review of a decision granting summary judgment is de novo.[6]

## DISCUSSION

■ It is undisputed that the installment fees were fully disclosed, were reasonable,[7] and were voluntarily

---

[5] Clerk's Papers at 374.

[6] *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c).

[7] The evidence established that the fee did not cover all the costs of administering the installment plan.

paid.[8] They were also not improper or illegal.[9] The parties disagree as to whether the fees qualify as premium and, if so, whether American State's failure to disclose them as such violated the statute.[10] But injury is a requisite element of all Sheldon's claims.[11] Assuming the fees constitute premium and should have been disclosed as such, the determinative question here is whether any harm resulted from American States' failure to do so.[12]

Sheldon does not try to show that disclosure of the fee on the billing statements (rather than on the declaration page as premium) caused him any injury. This is not surprising. American States quoted Sheldon a price for the insurance policy he selected. That price was the total he was obligated to pay. American States then informed Sheldon he could elect to pay in installments, in exchange for a small fee. Sheldon accepted, fully understanding he

[8] Sheldon declared the convenience of the installment option was worth the service fee and he would elect that option again.

[9] Correspondence between American States and the Office of the Insurance Commissioner (OIC) makes clear that the OIC approved the fees. OIC's sole concern was to ensure the fees were reported as income on American States' annual rate statement.

[10] The debatable question is whether the installment fee is charged for the procurement of insurance. The insurance contract was agreed upon, and the premium set, before any installment arrangement was offered. *Compare Blanchard v. Allstate Ins. Co.*, 99-2460 (La. App. 1 Cir. 10/18/00), 774 So. 2d 1002, 1006 (concluding that installment fees are not paid to procure insurance contract, but for the privilege of paying the premium over time, and holding "it is clear that the fees need not be disclosed on the policy") (emphasis omitted), *with Liberty Mut. Ins. Co. v. State Tax Comm'n*, 365 Mass. 411, 312 N.E.2d 559 (1974) (holding that installment charges are part of gross premiums for premium excise tax purposes); *accord Allstate Ins. Co. v. State Bd. of Equalization*, 169 Cal. App. 2d 165, 336 P.2d 961 (1959); *State Ins. Comm'r v. Allstate Ins. Co.*, 221 Or. 371, 351 P.2d 433 (1960). American States does not assign error to the trial court's ruling that the fee constitutes premium. We therefore do not decide this issue.

[11] *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 792, 719 P.2d 531 (1986) (private CPA action requires showing that plaintiff was injured in his or her business or property); *N.W. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (breach of contract is actionable where contract imposed a duty, duty is breached, and breach proximately caused damage); *Lloyd v. Ridgefield Lumber Ass'n*, 38 Wn.2d 723, 735-36, 231 P.2d 613 (1951) (essential element of unjust enrichment is that one profits or enriches oneself inequitably at another's expense).

[12] Sheldon has not advanced claims for injunctive or declaratory relief.

need not pay the service charge if he paid the entire premium when it was due. Sheldon was not misled and indeed received value for his money.

Rather, Sheldon identifies his harm as the payment of an illegal fee. He contends he paid a fee the company was not authorized to charge, which he variously characterizes as "illegal premium," part of an "illegal contract," and "ill-gotten gains." Sheldon contends American States induces policyholders to enter into an illegal contract, and then collects "more than was legally allowed."[13]

We reject these arguments. The fee was not itself illegal. Nor was it hidden, unfair, or unreasonable. Assuming that the fee constitutes premium, and that failure to disclose it as such violated the statute, this violation did not render either the fee or the contract illegal. Sheldon points to RCW 48.30.190(3), which provides that "no person shall wilfully or knowingly fail to return . . . any sum collected as a premium for insurance in excess of the amount actually expended for insurance." But RCW 48.30.190 is titled "Illegal dealing in premiums" and provides for criminal penalties. It is not aimed at misdescribed but otherwise legal fees, and does not create a private right of action.

■ The chief basis for Sheldon's disgorgement argument is RCW 48.18.180(2): "No insurer . . . shall charge or receive any fee . . . for insurance which is not included in the premium specified in the policy." There appear to be two purposes for this section: full disclosure of the costs of insurance, and proper reporting of insurers' income. Full disclosure benefits the policyholder; proper reporting ensures taxes are paid, and benefits the insurance regulatory scheme. Both these purposes were satisfied here. We do not sanction violations of statutes. But we cannot agree with Sheldon's contention that a violation causing no harm to policyholders must result in forfeiture of an otherwise legal and reasonable fee.

---

[13] Reply Br. at 16.

We agree with the trial court that Sheldon fails to establish even the possibility of harm from the insurer's error. We therefore affirm summary judgment of dismissal.

Cox, C.J., and COLEMAN, J., concur.

Review denied at 153 Wn.2d 1030 (2005).