Judge Roland L. Belsome
This is a code violation case concerning a French Quarter residence. The appeal stems from an administrative adjudication against the Plaintiff, Guido Sutter, by the City of New Orleans, through the Vieux Carré Commission (VCC). The Plaintiff appeals the trial court's February 16, 2017, judgment denying relief and affirming the VCC's administrative adjudication. For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The Plaintiff owns a residence located at 740 Barracks Street, in New Orleans, Louisiana, where he has claimed a homestead exemption for the last several years.[1] On March 30, 2016, a VCC building inspector conducted an inspection of the property while workers were present, noting various violations. The violations included the following:
1. Working without required approval;
2. Roof repair without a permit;
3. Replacing gutters without a permit;
4. Damaged and missing glass doors;
5. Demolition by neglect;
6. Hazardous conditions due to portions of the building that may fall;
7. Defective or deteriorating walls;
8. Building not watertight due to deteriorated or ineffective waterproofing;
9. Deteriorated roof shingles;
10. Deteriorated doors;
11. Missing and deteriorated gutters;
12. Deteriorated trim;
13. Vegetation on the building;
14. Deteriorated paint.
Due to the alleged violations, a stop work order was issued. On the same day, the inspector mailed a Notice of Violation to the Plaintiff at his Barracks Street address. A Notice of Hearing concerning the alleged violations was mailed to the *1061 Plaintiff on May 6, 2016. A subsequent inspection took place on May 13, 2016. Photographs from this date reveal that the Notice of Hearing was affixed to the property. When the Plaintiff failed to appear at the scheduled hearing on May 25, 2016, the hearing officer found the Plaintiff guilty of the fourteen violations. The Plaintiff was fined $7,000.00 ($500.00 per violation) and $75.00 in hearing costs.
On June 13, 2016, the Plaintiff filed a "Petition to Annul/Vacate Notice of Administrative Judgment and/or Appeal" in the trial court. The administrative record was lodged and the City filed a brief in opposition. The trial court held two hearings on the matter. After the first hearing, the trial court advised the parties to discuss a reduction in fines and to eliminate duplicate violations. Though the record is silent on the matter, the City stipulates that it reduced the violations from fourteen to nine, pursuant to the recommendation of the trial court after the first hearing. After the second hearing, the trial court denied the relief requested in the Plaintiff's petition; however, it reduced the violations from fourteen to nine. As a result, the Plaintiff was ordered to pay $4,575.00 in fines and hearing costs, as well as the City's deferred filing costs.[2] The trial court also designated the appeal as final. This devolutive appeal followed.[3]
STANDARD OF REVIEW
The general authority for local government to regulate land use is conferred by La. Const. Art. 6, § 17, which provides, in part:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use,
zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
Land use is subject to the police power of various governing bodies, and the courts will not interfere with the decisions of these bodies unless it is clear that their action is without any relation to the public health, safety, or general welfare. See Palermo Land Co., Inc. v. Planning Comm'n of Calcasieu Parish , 561 So.2d 482, 491 (La. 1990) ; Apasra Properties, LLC v. City of New Orleans , 09-0709, p. 8 (La. App. 4 Cir. 2/11/10), 31 So.3d 615, 621.
"In reviewing the [land use] decisions of public bodies [the City of New Orleans through the VCC in the instant case], the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily."[4] Herman v. City of New Orleans , 14-0891, p. 6 (La. App. 4 Cir. 1/21/15), 158 So.3d 911, 915 (citation omitted);
*1062 see also , Palermo , 561 So.2d at 492 ; Tucker v. City Council for City of New Orleans , 343 So.2d 396, 399 (La. App. 4th Cir. 2/15/77), (where this Court found that judicial review of an action of a local governing body in reversing or modifying a decision of a historic district commission is limited to deciding whether the governing body acted reasonably). "Generally, 'capriciously' has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated competent evidence." Herman , 158 So.3d at 915-16. "The word 'arbitrary' implies a disregard of evidence or the proper weight thereof." Id. at 916.
"An administrative agency's proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds for reversal or modification." Vincent v. Munster , 16-0295, p. 4 (La. App. 4 Cir. 12/14/16), 206 So.3d 1040, 1044, reh'g denied (12/28/2016) (citations omitted); see also Vieux Carré Property Owners v. City of New Orleans , 14-0825, p. 7 (La. App. 4 Cir. 4/15/15), 216 So.3d 873,878, writ denied , 15-1147 (La. 9/18/15), 178 So.3d 149 ("The aggrieved party bears the burden of showing that the BZA [Board of Zoning Adjustments] decision is arbitrary, capricious, or manifestly erroneous in light of substantial evidence in the record. Absent this showing, the reviewing court may not substitute its own judgment for that of the BZA.") (internal citations omitted).
LAW AND ANALYSIS
In this appeal, the Plaintiff raises two assignments of error: 1) the trial court erred in failing to annul the administrative ruling in light of the VCC's failure to provide adequate notice of the hearing in accordance with due process of law; and 2) the trial court erred in upholding the findings of the VCC when the work being performed was for ordinary maintenance and did not require a permit.
In his first assignment of error, the Plaintiff argues that he was not provided adequate notice of the administrative hearing; therefore, he concludes that the administrative judgment is an absolute nullity.
The New Orleans Municipal Code of Ordinances Chapter 6, Section 6-36(c) states:
Prior to holding an administrative hearing pursuant to this article, the alleged violator shall be notified at least 15 days in advance of the date that such a hearing is scheduled. Notice shall be personally served or sent to the alleged violator by regular and certified or registered U.S. Mail at the address listed in the assessor's office of the parish. The date of the postmark shall be deemed to be the date of delivery. Any notification so sent and returned by the U.S. Post Office shall be considered as having fulfilled the notification requirement. Proof of notification and attempts at service shall be entered in the record for each case prior to the hearing.
Section 6-36(d) also requires a copy of the notice of violation to be affixed to the property in a prominent location at least five days before the hearing date.
The record demonstrates that the VCC gave adequate notice of the hearing as required by the City Code, in accordance with due process of law. The affidavit of Lillian McNee, One Stop Shop Adjudication Coordinator, reveals that the notice of hearing was mailed to the Plaintiff at the Barracks Street address, which was listed as the Plaintiff's address on the assessor's website. The record also contains a copy of a certified envelope that was returned to the Post Office undelivered. Finally, the *1063 record establishes that the notice was affixed to the front of the property on May 13, 2016, which is more than five days before the hearing, in accordance with Section 6-36(d). The written adjudication from May 25, 2016 further documents the notice attempt and timely posting, in accordance with 6-36(d).
The Plaintiff argues for the imposition of a higher burden upon the VCC regarding notification. He claims that the VCC had an obligation to mail notice to all reasonably available addresses to ensure notice was received.[5] However,
Section 6-36 does not impose such a burden to fulfill the notice requirement. Specifically, Section 6-36(c) specifies that any notifications sent and returned shall be considered as fulfilling the notice requirement. Furthermore, in addition to the fact that the certified letter was returned, notice was affixed to the property in a prominent place. Under these circumstances, the VCC complied with the notice requirements under Section 6-36. Accordingly, the Plaintiff received adequate notice and an opportunity to be heard in accordance with due process of law.
In his second assignment of error, the Plaintiff asserts that the trial court erred in upholding the violations when the work being performed was ordinary maintenance and did not require a permit. He argues that he did not use any new materials; rather, he was re-securing loose or missing shingles, weatherboards, and gutters, and that there was no proof of neglect, deterioration, or hazaradous conditions on the premises.
Contrary to the Plaintiff's argument, the permit requirement does not hinge upon the use of new material. Chapter 166, Section 35 of the New Orleans Municipal Code of Ordinances[6] requires an owner to apply for a VCC permit whenever there are any alterations to any portion of an exterior building in the Vieux Carré. Additionally, aside from ordinary maintenance and repairs, La. R.S. 25:737[7] generally requires *1064 an owner to apply for a certificate of appropriateness whenever an owner alters or restores exterior architectural features to structures in a historic preservation district. Thus, a permit is required when alterations or restorations to the exterior of VCC property are being made.
By the Plaintiff's own admission, various repairs to re-install loose and/or detached gutters, siding,[8] flashing, and weatherboards were being conducted to the exterior of the building. The photographs in the record further document the condition of the property. Since the attempted repairs necessitated alterations beyond ordinary maintenance, we cannot find that the VCC was unreasonable in finding that the Plaintiff required a permit before performing the work.
Although the Plaintiff did not appear at the hearing to argue the merits of the charged violations; the record, which contains photographs of the condition of the property on March 30, 2016, and May 13, 2016, adequately supports the VCC's adjudication on the violations. Thus, we cannot find that the VCC acted in an unreasonable, arbitrary, or capricious manner.
CONCLUSION
For the foregoing reasons, we do not find any error in the trial court's judgment upholding nine of the fourteen violations. Accordingly, the trial court's judgment denying the relief requested is affirmed.
AFFIRMED

The Plaintiff claimed a homestead exemption on the property in 2015, 2016, and 2017.

Notably, the Plaintiff did not challenge the portion of the trial court judgment pertaining to the payment of the City's deferred filing costs.

Initially, the Plaintiff filed an application for supervisory writs. This Court granted the application for the sole purpose of remanding to the trial court to consider the notice of intent as a motion for appeal. On remand, the Plaintiff filed a motion for a devolutive appeal.

When reviewing an administrative decision, the district court functions as an appellate court. Since no deference is owed by the appellate court to the district court's fact findings or legal conclusions, the appellate court need only review the findings and decision of the administrative agency. Sylvester v. City of New Orleans Through Code Enf't & Hearings Bureau , 17-0283, p. 4, 228 So.3d 285, 287 (La. App. 4 Cir. 10/11/17), reh'g denied , (10/20/2017).

The jurisprudence cited by the Plaintiff in support of this argument is inapposite, as those cases involved tax sales of property, which reasonably require actual notice whenever practicable.

New Orleans Municipal Code of Ordinances 166-35 states:
Before the commencement of any work in the erection of any new building or in the alteration or addition to, or painting or repainting or demolishing of any existing building, where any portion of the exterior of the building is in the Vieux Carré section, application by the owner for a permit therefor shall be made to the Vieux Carré Commission, accompanied by the full plans and specifications thereof so far as they relate to the proposed appearance, color, texture of materials and architectural design of the exterior, including the front, sides, rear and roof of such building, alteration or addition or of any out building, party wall, courtyard, fence or other dependency thereof.

La. R.S. 25:737 states, in pertinent part:
A. No private building, structure, or edifice, including fences, boundary walls, signs, light fixtures, steps and paving or other appurtenant fixtures shall be erected, altered, restored, moved or demolished within an historic preservation district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to and approved by an historic preservation district commission, except as otherwise provided by the governing body in the ordinance establishing such commission or as provided by rules, regulations, policies, procedures and standards adopted by said commission. Similarly, if earthworks of historical or archaeological importance exists in the historic district there shall be no excavating or moving of earth, rock or subsoil without a certificate of appropriateness. For the purposes of this Chapter "exterior architectural features" shall include but need not be limited to the color, architectural style, general design and general arrangement of the exterior of a structure, including the kind and texture of the building material, the type and style of all roofs, windows, doors, light fixtures, signs and other appurtenant fixtures. The style, scale, material, size and location of outdoor advertising signs and bill posters within an historic preservation district shall also be under the control of such commission.
...
D. Nothing in this Chapter shall be construed to prevent ordinary maintenance or repairs which do not involve a change of design, material, or of the outward appearance, thereof; nor to prevent the construction, reconstruction, alteration or demolition of any such feature which is required by the public safety because of an unsafe or dangerous condition. The requirements of this Chapter shall not apply to work which has begun or for which a permit has been issued prior to the establishment of the historic preservation district.

Plaintiff retained the services of a contractor to secure the siding.