NATALIE HENDERSON

VERSUS

LOUISIANA STATE BOARD OF PRACTICAL
NURSE EXAMINERS

NO. 24-CA-265

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 845-908, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

January 29, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Timothy S. Marcel

<u>**AFFIRMED**</u>
    **SMC**
    **JGG**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA STATE BOARD OF PRACTICAL NURSE EXAMINERS
   P. Lindsey Williams
   John W. Becknell, III

PLAINTIFF/APPELLANT,
NATALIE HENDERSON
   In Proper Person

**CHEHARDY, C.J.**

Plaintiff, Natalie Henderson, seeks review of the trial court's judgment affirming the decision of defendant, the Louisiana State Board of Practical Nurse Examiners ("the Board"), to suspend her practical nursing license. For the reasons that follow, we affirm the Board's ruling.

*Facts and Procedural History*

Ms. Henderson was licensed in Louisiana as a practical nurse on September 7, 2011. On April 19, 2022, the Board received a complaint alleging that Ms. Henderson had abandoned her patients while employed at River Place Behavioral Health Hospital ("River Place"). The Board notified Ms. Henderson of the complaint and began an investigation, which included subpoenaing information from River Place. The investigation and responses to the subpoena uncovered additional allegations of wrongdoing, including failing to perform basic nursing skills, insubordination, and unprofessionalism. The Board subsequently issued a subpoena to the Jefferson Parish Sheriff's Office after learning that Ms. Henderson had been arrested for aggravated assault on her former domestic partner.

The Board issued a formal Complaint on March 23, 2023, notifying Ms. Henderson that a hearing would be held on April 27, 2023 to address the charges therein. Ms. Henderson appeared and participated in the Zoom hearing without counsel. The hearing officer heard testimony from Jason Krause, a Registered Nurse and the Chief Nursing Officer at River Place who filed the formal complaint regarding Ms. Henderson's conduct on the job. Over Ms. Henderson's objections, Mr. Krause testified that on April 5, 2022, she arrived late for work at 7:30 p.m., left her assignment without notice from 12:45 a.m. to 2:00 a.m., left again from 3:15 a.m. to 4:40 a.m., and then left early without relief, abandoning her assignment at 6:30 a.m. When she was contacted for an explanation of her behavior, she did not want to meet with her supervisor. Mr. Krause also testified

regarding a March 30, 2022 Employee Corrective Form, in which Ms. Henderson was written up for a violation of policies and procedures, including a failure to document, unsatisfactory work quality, and carelessness, with specific incidents occurring on March 22, 25, and 27, 2022.[1] According to Mr. Krause's testimony, this was Ms. Henderson's final written warning, due to the severity of certain medication variances. He stated that if there were other violations of practice or policy, Ms. Henderson would be terminated. Mr. Krause and the human resources director both signed the form, but Ms. Henderson refused to sign. Subsequently, Ms. Henderson sent Mr. Krause a text message resigning her post, and sent further texts threatening him with litigation.

After Mr. Krause's testimony, an audio recording of a conversation between Ms. Henderson and Mr. Krause, which Ms. Henderson had recorded surreptitiously, was played for the hearing officer.[2] Ms. Henderson also testified on her own behalf. She indicated that she felt she was being targeted for reporting adverse conditions in her various jobs. She believed that Mr. Krause had reported her because he was upset with her for not talking to him after she had been written up for work infractions. She contended that the behavioral techs on her shift at River Place would sleep on the job and submitted into the record pictures of people sleeping at their desks. Ms. Henderson further testified that she often felt unsafe because, she claimed, there was not proper security at the facility. Ms. Henderson reiterated that she is an advocate for all her patients and that she would never

---

[1] The March 30 Employee Corrective Form stated that on March 22, 2022, Ms. Henderson documented that an HIV patient with seizure disorders refused medications, but there was no follow up with a provider. On March 25, she did not document it on the medication administration record (MAR), and the patient missed needed seizure and HIV medications, yet she noted that the patient "tolerated all meds well." On March 27, Ms. Henderson charted that the patient refused all meds, without any documented follow up with a provider for the seizure and HIV medications. According to Mr. Krause's testimony, the Form also noted that over several nights—at least 20—many patients did not have their arm bands scanned, and no medications were scanned, but it was documented on the MAR that medication had been given.

[2] Counsel for the Board stated on the record that Ms. Henderson's secretly recorded audio recording actually corroborated Mr. Krause's hearing testimony.

abandon a patient. She also stated that the patients never had the armbands/wristbands that Mr. Krause claimed they had, implicitly suggesting that this was why she may not have been following protocol when distributing medication. She further contended that she was not trained regarding how to replace a patient's armband.

In written reasons, the hearing officer found Mr. Krause's testimony to be credible, but did not find Ms. Henderson to be credible, nor was she someone who analyzed situations in a fair and balanced manner. The hearing officer determined that Ms. Henderson did not take responsibility for her own actions, that she had unfounded explanations for the allegations against her, and that her reasons for her absence from her unit and her patients were not justifiable.

The hearing officer further noted the charges against Ms. Henderson from the Orleans Criminal Sheriff's Office for aggravated assault with a firearm and simple battery. She was classified as a "fugitive" after she failed to appear in an Orleans Parish court to answer those charges, though the notice to appear was sent to the wrong address. Early in the morning on June 9, 2022, members of the U.S. Marshals Service located Ms. Henderson while she was jogging in Jefferson Parish, handcuffed her, and found that she was wearing a fanny pack containing a handgun with several loose rounds. The Jefferson Parish Sheriff's Office arrested her as a fugitive and for battery of a police officer. The charges related to the June 9th arrest indicate that Ms. Henderson yelled profanities, spit in the face of law enforcement, attempted to strike a task force member with her elbow, and struck a task force member in the lower leg area with her right foot.

The hearing officer concluded as a matter of law that Ms. Henderson had violated La. R.S. 37:969(A)(4)(c), (f), and (g), as she was unfit, or incompetent by reason of negligence, habit, or other causes; guilty of unprofessional conduct; and

violated other provisions, including La. Admin. Code 46:306(T)(3) and (T)(8)(a, b, g, i, j, l, p, and t).[3]

In a July 28, 2023 Order, the Board suspended Ms. Henderson's practical nursing license until she complied with certain enumerated stipulations, which included obtaining a psychological evaluation conducted by a licensed certified psychologist or psychiatrist of her choice, and participating in any treatment or aftercare programs that may be prescribed. Additionally, the Board required Ms. Henderson to complete courses (1) Dealing with Authority in the Workforce Management, and (2) HIV/AIDS Training and Education for Healthcare Professionals. The Board also ordered Ms. Henderson to pay a $1000 fine for the violations detailed in the conclusions of law, and a $1500 hearing assessment fee.

On August 25, 2023, Ms. Henderson filed a Petition for Judicial Review of the Board's Order in the 24th Judicial District Court. On March 5, 2024, the trial court heard the matter. The trial court issued a written judgment on May 17, 2024, affirming the Board's Order. The judgment further noted that Ms. Henderson "failed to meet her burden of proof that Respondent's decision was in violation of La. R.S. 49:978.1(G)." Ms. Henderson now seeks review in this Court.

---

[3] La. Admin. Code 46:306(T)(8) states, in relevant part:

> 8. being guilty of unprofessional conduct;
>    a. failure to practice practical nursing in accordance with the standards normally expected;
>    b. failure to utilize appropriate judgment in administering nursing practice;
>                          ***
>    g. improper use of drugs, medical supplies, or patients' records;
>                          ***
>    i. falsifying records;
>    j. intentionally committing any act that adversely affects the physical or psychosocial welfare of the patient;
>                          ***
>    l. leaving a nursing assignment without properly notifying appropriate personnel;
>                          ***
>    p. inappropriate, incomplete or improper documentation;
>                          ***
>    t. violating any provisions of R.S. 37:961 et seq. (the practical nursing practice act), as amended or aiding and abetting therein.

*Law and Analysis*

A party aggrieved by a final agency decision in an adjudication proceeding is entitled to have that decision reviewed by the district court of the parish in which the agency is located. La. R.S. 49:978.1(A) and (B). The agency shall submit to the reviewing court the original or a certified copy of the entire record of the administrative proceeding under review unless stipulated to the contrary by the parties. La. R.S. 49:978.1(D); *Matter of Ford v. Louisiana State Bd. of Practical Nurse Examiners*, 22-481 (La. App. 5 Cir. 4/26/23), 361 So.3d 1200, 1206. A party aggrieved by the district court's decision is entitled to appeal to the appropriate appellate court. *Id.* (citing La. R.S. 49:979). An appellate court reviews the findings and decision of the administrative agency, not the decision of the district court. *Id.* (citing *Sylvester v. City of New Orleans Through Code Enforcement and Hearings Bureau*, 17-283 (La. App. 4 Cir. 10/11/17), 228 So.3d 285, 287).

La. R.S. 49:978.1(G) sets forth the exclusive grounds upon which a reviewing court may reverse or modify an administrative agency's decision on appeal. That statute provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the

> reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

*See also Spears v. Louisiana Board of Practical Nurse Examiners*, 16-587 (La. App. 5 Cir. 6/15/17), 223 So.3d 679, 687. Any one of the six bases enumerated in La. R.S. 49:978.1(G) is sufficient to modify or reverse an agency determination. *Blanchard v. Allstate Ins. Co.*, 99-2460 (La. App. 1 Cir. 10/18/00), 774 So.2d 1002, 1004, *writ denied*, 01-285 (La. 3/23/01), 787 So.2d 997.

Nevertheless, given the jurisprudential presumption of correctness of an agency's actions, the appellant bears the burden of proving that the record contains no facts that would establish the validity of the charges levied against her. *Spears*, 223 So.3d at 688. If a reasonable interpretation of the evidence supports the agency's determinations, the agency's decision is accorded great weight and will not be reversed or modified in the absence of a clear showing that the action was arbitrary or capricious. *Westbank Pharmacy of Belle Chase, LLC v. Louisiana Bd. of Pharmacy*, 23-1268 (La. App. 1 Cir. 5/31/24), 391 So.3d 66, 69.

On appeal, Ms. Henderson argues that the Board erred in using hearsay evidence to suspend her nursing license. Ms. Henderson further questions whether the suspension of her license was in retaliation because she is a "whistleblower."[4] Ms. Henderson notes that she has filed several complaints regarding previous employers, because her oath of nursing requires her to report "suspicions or known instances of abuse and neglect, especially in vulnerable populations[.]" She states that she has reported medical failures at Orleans Parish Prison, where she previously worked, and that she was a whistleblower after Hurricane Ida when Bob

_____

[4] In her *pro se* brief, Ms. Henderson asserts several other arguments that are not before us, as this appeal addresses only whether the Board acted arbitrarily and capriciously in suspending her nursing license. For example, Ms. Henderson contends that her civil rights were violated, that she was forced to work in a hostile work environment, that she is being retaliated against because she is a whistleblower, and that she is being punished for work-related issues that were not her responsibility. Ms. Henderson also contends that she suffers from PTSD and that she is a victim of domestic violence.

Dean housed nursing home patients in a warehouse with no food, water, or proper medical equipment.

Ms. Henderson further argues that she did not abandon patients, as she has been charged; she merely took breaks in her car like everyone else. She states that she never left the facility grounds, and that she still made rounds on her patients every two hours, but she claims she was the one who was "targeted" and "harassed." She contends the allegations against her are false and based on incompetent hearsay, and that the reporter, Jason Krause, is a liar. Finally, she argues that no evidence was introduced at the hearing to show that any of her patients suffered any harm during the time that her employer alleges she was out of the unit.

Furthermore, Ms. Henderson argues that the Board should have never considered the criminal charges against her in reaching its decision. She claims the Board's consideration of this irrelevant and prejudicial evidence was arbitrary and capricious. Finally, pursuant to the mental health evaluation she obtained at the Board's request, Ms. Henderson argues that she is competent and of sound mind, and that her nursing license should be reinstated.

In response, the Board argues that hearsay evidence, if competent and relevant, is admissible in an administrative hearing. *Honoré v. Dep't of Pub. Works*, 14-0986 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1129. The general rule in administrative hearings is to allow hearsay evidence and to recognize that the inability to cross-examine the declarant affects the weight that the evidence carries. *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 3/4/98), 708 So.2d 375, 382. The Board points out that Ms. Henderson offers no authority for her position that hearsay is disallowed in this context.

The Board further contends that the preponderance of the evidence, which includes the testimony of Mr. Krause and the documentary evidence of additional

complaints, supported the Board's findings that Ms. Henderson is unfit and incompetent by reasons of negligence, habit, or other causes, and that she is guilty of unprofessional conduct. As such, the Board argues that its decision to suspend Ms. Henderson's license to practice practical nursing in Louisiana was fully supported by the record. Its decision was not arbitrary, capricious, or an abuse of its discretion, and should be affirmed.

After a thorough review of the administrative record, we find the Board introduced, and the record contains, sufficient evidence in support of the charges against Ms. Henderson, and she has failed to meet her burden of proving that the record contains no facts to establish the validity of those charges. With regard to the charge of abandoning patients, Ms. Henderson freely admits that she left the unit for long periods of time to sit in her car, but she argues that because she did not leave the River Place grounds, she should not have been charged with misconduct. We disagree. No facility can function properly if the nursing staff is permitted to repeatedly leave the unit for extended periods of time without notice. That no major harm came to any of the patients in Ms. Henderson's absence is immaterial.

Furthermore, Ms. Henderson's only defense to the charges that she failed to properly document medication distribution is that none of the patients had armbands. However, Mr. Krause's testimony on this issue contradicted her claim, and the hearing officer found Mr. Krause's testimony credible. We have no reason to disregard the hearing officer's findings in this regard. We also note that Ms. Henderson's conduct during the administrative hearing further demonstrated her unwillingness to work within certain protocols, adhere to established policies, or take responsibility for her actions.

As to the criminal charges levied against Ms. Henderson, the administrative record reveals that none of these charges were prosecuted or resulted in a conviction, that Ms. Henderson successfully completed a diversion program on July 31, 2023, and that she has petitioned for an expungement. Furthermore, the Board's formal charges against Ms. Henderson do not appear to be based on the criminal charges that are unrelated to her work as a licensed practical nurse. Stated differently, even without evidence of the assault charges, the record contains sufficient evidence to support the Board's conclusion.

The Board's decision to suspend Ms. Henderson's practical nursing license was not arbitrary or capricious, nor did it violate any of the grounds enumerated in La. R.S. 49:978.1(G) that would permit reversal. Ms. Henderson may still practice practical nursing, albeit on a probationary status, upon compliance with all conditions enumerated in the Board's Order.

## CONCLUSION

The decision of the Louisiana State Board of Practical Nurse Examiners is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 29, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-265

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
JOHN W. BECKNELL, III (APPELLEE)

### MAILED
NATALIE HENDERSON  (APPELLANT)
3220 MORRICE DUNCAN DRIVE
NEW ORLEANS, LA 70126

P. LINDSEY WILLIAMS (APPELLEE)
ATTORNEY AT LAW
848 SECOND STREET
GRETNA, LA 70053